The board of supervisors of the county of Delaware, at its annual session in 1872, levied upon the town of Hancock, in that county, a tax of $11,138.98, to pay the interest due and to become due during the ensuing year upon $100,000 of bonds issued by the railroad commissioners of the town, and purporting to have been issued upon the faith and credit and in behalf of the town, and in pursuance of the authority conferred by the "act to facilitate the construction of the New York and Midland railroad, and to authorize towns to subscribe to the capital stock thereof," *Page 184 
passed April 5, 1866, and the subsequent act of May 15, 1867, on the same subject.
This sum was included in the general tax levied upon the town of Hancock in that year, and the board of supervisors issued to the defendant, as collector of the town, a warrant for the collection of the tax, directing him to pay out of the moneys collected by him, to the railroad commissioners of the town, the sum of $11,138.98, which was recited in the warrant to be the amount of railroad moneys levied therein. The defendant executed the warrant and collected the tax, but refused to pay it to the relators, as directed by his warrant, but paid it to the supervisor of the town; and it is claimed that he was justified in making such payment, on the ground that the direction contained in the warrant was unauthorized, and that the supervisor was legally entitled to receive the money. This view is founded upon the section of the Revised Statutes (1 R.S., 396, § 37) prescribing the form of a collector's warrant.
The warrant is to direct the collector to pay to certain town officers named the several sums raised in the town for the objects specified in the section; and to the supervisor of the town "all other moneys which shall have been raised therein to pay any other town expense." The residue of the moneys collected is to be paid by the collector to the treasurer of the county.
By the fourth section of the act of April 5, 1866, it is made the duty of the board of supervisors, under the circumstances stated therein, to cause to be levied and collected in each year, upon the real and personal estate of any town whose bonds have been issued under the act, at the same time and in the same manner as other taxes are levied and collected, the sum necessary to pay the principal and interest due and to become due during the year upon the bonds. This sum, the section declares, "when collected, shall be paid to the said commissioners, and by them applied to the payment of the principal and interest on said bonds, or so much thereof as shall remain unpaid after the application of *Page 185 
the said dividends and income (from the stock held by the town) to that purpose." The objection to the form of the warrant assumes the validity of the tax, and the authority of the supervisors to levy it. The general purpose of the statute prescribing the form of the warrant, and the directions to be inserted therein, is that money raised by taxation for special town purposes should be paid to the town officer who has the charge and responsibility of its disbursement. The money for highway purposes is to be paid to the commissioners of highways, and the school and poor fund to the commissioners of common schools and the overseers of the poor, respectively. The supervisor of the town has, under the act of 1866, no duty to perform in respect to the disbursement of the money raised for railroad purposes in the town. The board of supervisors, in levying the tax, act upon the report of the commissioners, and not at the instance of the supervisor. The commissioners are made the agents to issue the bonds, and to hold the stock purchased from the proceeds or taken in exchange therefor. They are authorized to receive the dividends on the stock, and to represent the town in the meetings of stockholders. They are made the custodians and the disbursing agents of the fund derived from dividends, or from taxation for railroad purposes, and are required to give an official bond.
The statute of 1866 is imperative that the money raised by taxation to pay the principal or interest on the bonds issued under the act shall, when collected, be paid to the commissioners. Conceding that the money so raised is to defray a town expense, within the meaning of the clause in section 37, which has been quoted, we are of opinion that the statute of 1866 operates as a qualification of the general statute prescribing the form of the collector's warrant, so far as to authorize the board of supervisors to direct the collector to pay over the money raised, to meet the payments on the bonds, directly to the commissioners.
It is also insisted that the defendant was justified in refusing to pay the money in question to the relators, on the *Page 186 
ground that the consent of the majority of the tax-payers, representing more than one-half of the taxable property of the town, to the creation of the debt, to pay the interest upon which the tax was collected, had not been obtained, as required by the act. It was a condition precedent to the exercise by the commissioners of the power to issue the bonds of the town, that such consent in writing should be obtained. The papers upon which the defendant resisted the application for the mandamus tend to show, if they do not conclusively establish, that the persons who signed the consent to the creation of the debt did not represent one-half of the taxable property of the town of Hancock, assessed and appearing upon the assessment roll of 1868, upon which the consent to bond the town was based.
We deem it unnecessary, in disposing of this case, to consider the effect to be given to the affidavit of the assessors, that the consent of a majority of the tax-payers, representing a majority of the taxable property of the town, had been obtained to the creation of the debt. This affidavit was annexed to and filed with the consent, and was in the form required by the act. The statute declares that "the same, or a certified copy thereof, shall be evidence of the fact therein contained, and shall be admitted in evidence in any court of this State, and before any judge or justice thereof." It is claimed on the part of the relators that the evidence furnished by the consent and affidavit is conclusive, against the town in favor of a transferree in good faith of the bonds, of the fact that the requisite consent had been obtained.
The cases of Starin v. Town of Genoa and Gould v. Townof Sterling (23 N.Y., 439) are relied upon by the defendant as establishing the opposite view. The statute considered in these cases differs in some, and perhaps material respects, from the one in question; but we refrain from expressing any opinion upon the point presented.
Assuming that the bonds were invalid, and that no tax could be legally levied to pay them, the defendant cannot dispute the right of the relators to the money in question. *Page 187 
He is a subordinate ministerial officer, charged with the duty of executing the warrant, for the collection of taxes, issued to him by the board of supervisors. He has acted under and affirmed the validity of the warrant by collecting the tax, and, having received the money, he cannot refuse to pay it over, on the ground that he collected it under a void authority. He could as well refuse to pay the money raised for highway purposes to the commissioners of highways, on the ground that the tax was not voted by the town; or the county treasurer might, with equal propriety, refuse to pay to the State the State tax deposited with him, on the ground that the law imposing it was unconstitutional. The money does not belong to the defendant. The warrant was regular on its face, and protected him in executing it. The money does not belong to the town. It was not collected out of its corporate property or by its direction; nor is it liable for the act either of the board of supervisors, or of the collector in levying or collecting it. (Lorillard v. The Townof Monroe, 11 N.Y., 392.) The defendant cannot claim to retain the money as the representative of the tax-payers. There is no relation of principal and agent, or trustee or cestui quetrust, existing between the tax-payers and the collector; and it does not appear but that it was paid by them voluntarily, and under circumstances which would prevent their recovering it back from any one. The town has received and still holds the stock of the railroad company, taken in exchange for the bonds; and the right of the bondholders to have the money applied to pay the interest on the bonds is much better certainly than any which the defendant can assert to retain it.
The cases of Ross v. Curtis (31 N.Y., 606) and of Murdock
v. Aikin (decided in this court in 1863, but not reported) are conclusive against the defendant upon the point in question. InRoss v. Curtis the action was brought by the holder of bonds, purporting to have been issued by the town of Sterling under an act authorizing the town to borrow money upon its bonds in aid of the construction of a railroad upon *Page 188 
certain conditions specified in the act, to recover the interest due. The defendant was supervisor of the town, and had received from the county treasurer money, raised by taxation in the town, to pay the interest on the bonds. The defendant gave his receipt for the money, specifying the purpose for which he received it; and it was made his duty by the statute to apply the money to the payment of the interest on the bonds issued under the act. He refused to pay the interest on the bonds held by the plaintiff, and rested his defence on the ground that they were issued contrary to the provisions of the statute, and were not valid obligations of the town. The court overruled the defence and said: "The only duty of the defendant was to ascertain who were the real owners of the bonds issued, and to pay to them the money so placed in his hands for that purpose. That was the extent of his authority; and when he undertook to review the legality of the acts of the board of supervisors in raising the money, or of the officers authorized to issue the bonds, he exceeded his powers, and assumed to do acts for which he had no authority." The same doctrine was declared by the court in Murdock v.Aikin upon substantially the same facts, and both cases were recognized and approved in the case of The People v. Mead
(36 N Y, 224). The proceedings in bonding the town of Hancock, and levying the tax, were, as to the defendant, res inter aliosacta, and cannot be drawn in question to justify him in refusing to complete the performance of the duty he has undertaken. It was the duty of the defendant to pay to the relators the $11,138.98, as directed by the warrant, and the performance of this duty may be enforced by mandamus. (McCullough v. Mayor, etc., ofBrooklyn, 23 Wend., 459; The People v. Mead, 24 N.Y., 114.)
The payment to the supervisor of the town was unauthorized; and it is not a ground for refusing to issue the writ that the defendant has, by his voluntary and wrongful act, subjected himself to loss, or that the performance of the duty enjoined upon him may, in consequence thereof, be difficult *Page 189 
or inconvenient. (Moses on Mandamus, 99; Adsit v. Brady, 4 Hill, 630.)
The judgment should be affirmed, with costs.