THE VILLAGE OF OLEAN, Respondent, v. JOHN KING et al., Appellants.

Plaintiff's charter (§ 16, chap. 110, Laws of 1882) confers upon its collector the powers of town collectors, and requires him to collect all taxes specified in the roll delivered to him, to pay over all moneys collected, and at the expiration of his warrant to return the same " with an itemized account of unpaid taxes." Provision is made for the collection of unpaid taxes so returned by suit and by sale of real estate. In an action upon a collector's bond it appeared that the amount paid over by him was $4,879.84, short of that called for by his warrant; this he did not return and did not render any account. *Held*, that judgment was properly rendered against him for such deficit; that as, without the return of the warrant, the village was deprived of the power to resort to the remedies given to it for the collection of unpaid taxes, in the absence of evidence to the contrary, the damage sustained was the amount unpaid.

By the charter (§ 16) plaintiff's board of trustees is given power to renew the warrant from time to time in its discretion. *Held*, that such a renewal without consent of the sureties did not discharge them; that they must be deemed to have executed the bond with knowledge of this provision.

*It seems* that bonds of this character must be construed in such a way as to secure the fidelity of the officer under the law, and regulations as to the time within which the taxes should be collected and the warrant returned are mere directions to the collector, not essential parts of the contract with the surety.

Also, *held*, that, assuming the invalidity of the tax levy, this afforded no justification to the collector in refusing to return the warrant.

While a tax collector may decline to collect a tax illegally levied, having collected it, he may not question the right of the proper authority to receive it and may be compelled to pay it over; so, also, at the expiration of his warrant he is bound to return it as required by law.

(Argued October 7, 1889; decided October 22, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, in favor of the plaintiff, entered upon an order made at the October Term, 1886, which denied a motion for a new trial and directed judgment on a verdict directed by the trial court.

This action was brought against the defendant John King, collector of the village of Olean, and Richard King and William W. Weston, sureties on his official bond.

The plaintiff claimed to recover the sum of $4,879.84 on said bond as the amount of taxes for which the collector is in default and for which his sureties are liable, being the difference between the total amount of taxes called for by the warrant and the amount paid in by the collector to the treasurer of the village

It appeared that King was appointed collector of the village by resolution of the board of trustees in March, 1883, and in May following, pursuant to the terms of the charter, the bond in suit was executed and delivered and approved by the trustees. It recites the appointment of King as collector, and is conditioned that King "shall faithfully discharge the duties of his said office, and honestly and faithfully account for and pay over all money received by virtue of his office."

On July eleventh the board of trustees delivered to King the tax-roll of the village and the warrant for the collection of the taxes. The amount of taxes carried out on the roll was $20,046.74, to which was to be added a poll tax of about $900, making the total amount of taxes called for by the warrant $20,946.74, and said collector was thereby directed to return the same within sixty days from July eleventh, and to pay over all moneys within ten days after the same were collected by him. At the expiration of said sixty days the warrant was renewed

for thirty days.   King collected and paid over to the treas-
urer of the village before December thirty-first $16,066,80,
and on that day, by resolution of the board of trustees, of
which notice was given him on January 1, 1884, he was
required to return the warrant on or before January seventh.
King failed to make any return of the warrant and never
paid over to the village any taxes collected in addition to the
sum above named.

A verdict was directed in favor of the plaintiff for the
amount claimed.

Further facts are stated in the opinion.

*J. H. Waring* for appellants.   The court erred in holding,
as matter of law, that the collector was charged with the
aggregate of the taxes carried out, and directing a verdict for
plaintiff for the difference between that aggregate and the
total he paid the treasurer.   (*Horn* v. *Perry*, 14 Hun, 409 ;
*Hatch* v. *Elkins*, 65 N. Y. 489.)   The sureties were dis-
charged by the extension of the time for the collection of the
uncollected taxes.   (*Johnson* v. *Halker*, 8 Heisk. 588; *State*
v. *Roberts*, 68 Mo. 234; *Davis* v. *People*, 1 Gilm. 409;
*People* v. *McHulton*, 2 id. 638; 29 A. L. Jour. 405.)   It was
impracticable, if not absolutely impossible, for the collector or
the taxpayer to separate the invalid part from the total, pay
the legal portion and discard or ignore the residue.   (*People*
v. *Hagadorn*, 104 N. Y. 516–524 ; *Bradley* v. *Ward*, 58 id.
401.)   Instead of being bound to proceed and collect, the
collector had the right to refrain altogether, or in case he had
collected a part of the total, to stop and refuse to proceed
further.   (*People* v. *Schoonmaker*, 13 N. Y. 238 ; *Cornell*
v. *Barnes*, 7 Hill, 35 ; *Dunlap* v. *Hunting*, 2 Denio, 643 ;
*McDonald* v. *Bunn*, 3 id. 45 ; *Earl* v. *Camp*, 16 Wend.
562 ; *Tucker* v. *Mallery*, 48 Barb. 85 ; *Bradley* v. *Ward*,
58 N. Y. 401.)

*M. B. Jewell* for respondent.   It was the plain duty of the
collector to collect the taxes under the warrant, which afforded
him perfect protection, and, under these circumstances, the

collector and his sureties cannot now be heard to question the validity of the assessment. (*Clark* v. *Miller*, 54 N. Y. 528; 96 id. 311; 5 Hill, 440; 58 N. Y. 402; 31 Barb. 312; 50 N. Y. 653; 35 id. 462.) The collector and the sureties upon the bond stood charged with the tax which, by the roll and warrant delivered to him, he was required to collect, (39 N. Y. 394; 99 id. 316; 58 id. 402; 1 Denio, 233; 62 N. Y. 89; 36 id. 70.) The sureties must be deemed to have known the provision, section 16, title 2, chapter 110, Laws 1882, giving the board of trustees power to renew the warrant from time to time, when they executed the bond, and it was as much a part of the bond as though it had been recited in the bond and specifically assented to by the sureties. (36 N. Y. 459–462.)

Brown, J. The appellants assign three **grounds** for the reversal of a judgment in this action.

*First.* That the proof does not show that the collector failed to pay over to the village any taxes collected by him, and that the failure to return the warrant to the trustees with an account as required by statute, inflicted no loss upon the village, or, at most, entitled it to but nominal damages.

*Second.* That the sureties were discharged by the extension of the warrant for the collection of the tax.

*Third.* That the tax levy was invalid and neither the collector or his sureties are liable for the non-collection of any part of it.

The duty which the charter of the village imposed upon the collector was to collect all taxes which should be specified in the roll delivered to him by the board of trustees with their warrant attached  *  *  *  within the time named in the warrant; and to pay over to the treasurer, as often as should be prescribed in the warrant, all moneys collected by him and at the expiration of such warrant to return the same to the board of trustees with an account certified by his oath, that the same was correct, of the moneys collected by him, the amount paid to the treasurer and an itemized account of the unpaid taxes.

The collector never returned the warrant to the trustees and neglected and refused to make any account of the moneys collected by him, and failed to render an itemized account of the unpaid taxes.

From the failure to make such an account the village clearly sustained a loss equal to the amount of uncollected taxes.

In addition to the power conferred upon the collector for the collection of the taxes, the charter provided that all taxes which should be unpaid for three months after the date of the warrant should bear interest at the rate of ten per centum per annum, and might be sued for and recovered by the village against any person liable therefor. That whenever any person upon whose real estate a tax should be assessed and levied should neglect to pay the same, and there should be no personal property found whereon the same could be levied or out of which such tax could be collected, the collector should make return thereof to the clerk, and thereupon the board of trustees was authorized to cause such real estate to be sold. It will thus be seen that three ways were provided to collect the taxes — first, through the instrumentality of the collector upon whom the powers of a town collector are conferred ; second, by suit against the taxpayer ; and, third, by proceedings to sell the real estate upon which the tax is a lien. But the ability to pursue the two latter remedies is wholly dependent on the return of the collector with an itemized account of the unpaid tax. He has possession of the tax-roll, and he alone, of all the village officers, knows who of the taxpayers are in default. Unless he furnishes this information to the trustees, it would be practically impossible for them to proceed by suit or proceedings against real estate, for the simple reason that they would not know who, among the numerous taxpayers of the village, had paid their tax and who had not.

The taxpayer cannot be sued until three months after the date of the warrant, and land can be sold only when no personal property can be found out of which the tax can be collected, of which fact the collector must make a return before the proceedings can be instituted. The return of the

warrant becomes, therefore, a condition precedent to the exercise by the village of the other remedies given by the charter for the collection of the tax. And without this return it is deprived of the power to collect the taxes by suit against the taxpayer, or by proceedings against the land, and the amount of injury thus sustained, in the absence of any evidence to the contrary, is the amount of the uncollected tax.

This rule of liability inflicts no injury and imposes no hardship on the collector. He has but to comply with the very simple provision of the statute and render his account to exonerate himself and relieve his sureties from liability. He stands charged, in the first instance, with the total tax of the village, and receives credit upon the return of the warrant for all taxes collected and paid over to the village, and all specified in his account as unpaid. I think, therefore, the trial court committed no error in the amount for which the verdict was directed.

The renewal of the warrant at the expiration of the sixty days named therein, for an additional thirty days, did not discharge the sureties. That the liabilities of sureties are *strictissimi juris*, and cannot be extended by construction or enlarged by the acts of others, is a well-settled principle of law, and that it applies alike to sureties in official bonds and private obligations cannot very well be denied, but I think it has no application to the facts of this case.

The collector was one of the appointed officers of the village, and held his office by virtue of appointment by the board of trustees, and during the pleasure of said board. He was required to execute a bond conditioned, among other things, that he would faithfully discharge the duties of his office, and the bond in suit was in strict compliance with the provisions of the charter in this respect.

The obligation of the sureties was not, therefore, limited to the collection of the particular tax in question or to the performance of the collector's duty under the warrant of July eleventh, but included all duties which by virtue of his office fell to the collector during his term of office.

The case falls within the principle decided by this court in *People* v. *Vilas*, (36 N. Y. 459). That was an action against sureties upon an official bond of a loan commissioner conditioned that said commissioner would faithfully discharge his duties pursuant to a certain statute recited in the bond. Subsequent to the execution of the bond the legislature passed an act the effect of which was to add $500 to the fund in the commissioner's hands, and the question was whether the addition thus made to the fund discharged the sureties.

The Supreme Court held that it did, but this court decided otherwise, and in so deciding Judge GROVER pointed out the distinction between contracts between individuals and contracts of the class under consideration, as follows: "In the former no alteration can be made without the assent of both parties. In the latter the legislature have power at any and all times to change the duties of officers, and the continued existence of this power is known to the officer and his sureties, and the officer accepts the office and the sureties execute the bond with this knowledge. It is, I think, the same in effect as though the power was recited in the bond.  *  *  *  It is not true that one taking an oath to discharge the duties of an office simply swears to discharge them as then prescribed by law, but that he swears to discharge them as they may from time to time be fixed by the law-making power. So an official bond conditioned for the discharge of the duties of the office should in like manner be understood not as restricted to duties as then prescribed by law, but as embracing the duties of the office as from time to time fixed and regulated by the legislature."

In *People* v. *Pennock* (60 N. Y. 426), which was an action on the official bond of a supervisor, it was said by Judge ALLEN that "the condition of the bond must be construed and the liability of the sureties limited in reference to the statutes making the supervisor a custodian of public money. These statutes make a part of the contract of the surety."

The principle decided in *People* v. *Vilas* (*supra*), is

broader than is necessary to be applied to the sureties in this case. Here there was no change made subsequent to the execution of the bond in the duties of the collector, and the power to renew the bond or to issue a new warrant for uncollected taxes was, by the express terms of the charter, given to the board of trustees. The sureties must be deemed to have executed the bond with knowledge of and to have contracted with reference to this provision of the charter.

If the warrant had been returned and a new one issued, it could hardly be seriously claimed that the faithful performance of the collector's duty, under the new warrant, would not have been strictly within the condition of the bond, yet the duty under the extended warrant differs in no respect from those under a new warrant, and the power of the trustees is the same as to each.

Bonds of this character must be construed in such way as to secure the fidelity of the officer under the law, and regulations as to the time within which the taxes shall be collected and the warrant returned, are mere directions to the collector as to the manner of performing the duties of his office, and are not essential parts of the contract with the surety. (*U. S.* v. *Boyd,* 15 Pet. 187; *State* v. *Carleton,* 1 Gill. 249; *Commonwealth* v. *Holmes,* 25 Grattan, 771; *U. S.* v. *Vanzandt,* 11 Wheat. 184.)

The final objection is based upon the alleged invalidity of the tax levy. We do not deem it necessary to determine whether the tax was legally levied or not. Assuming it to be open to the objection which the defendants made to it, that fact affords no justification to the collector in refusing to make his return of the warrant in the manner required by the charter.

While a tax collector may decline to proceed in the collection of a tax illegally levied, as any person may refuse to recognize any illegal authority, or to obey an unconstitutional law, he may do so only for his own protection. Having collected a tax, he cannot then question the right of the proper authority to receive it, but must pay it over. (*O'Neal* v.

*School Comrs.*, 27 Md. 227 ; *Commonwealth* v. *Philadelphia*, 27 Penn. 497 ; *Waters* v. *State*, 1 Gill, 302 ; *Smyth* v. *Titcomb*, 31 Me. 272 ; *People* v. *Brown*, 55 N. Y. 180.)

So he is likewise bound, at the expiration of his warrant, to return it to the proper authority as required by law. To do otherwise is a clear violation of his official duty. He can constitute himself a judge of the validity of the tax for his own protection only. The tax-roll is the property of the village and the collector is its agent.

The village is entitled to assume that the tax is valid, and to proceed to enforce its collection until a competent tribunal decides otherwise, and it would be a remarkable doctrine that would permit a collector to interpose himself as an obstacle to the collection of the taxes, and would justify him in refusing to return the tax-roll to the trustees.

The judgment should be affirmed, with costs.

All concur, except BRADLEY and HAIGHT, JJ., not sitting. Judgment affirmed.